UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Aristocrat Technologies Australia Pty Ltd.
an Australia proprietary limited company
85 Epping Road
North Ryde, NSW 2113
Australia

Case No.

and

Aristocrat Technologies, Inc.
a Nevada corporation
10220 Aristocrat Way
Las Vegas, Nevada 89135

Plaintiffs,

v.

American Entertainment Services, Inc.
a Wisconsin corporation
W337S5059 Road GG, Dousman,
Wisconsin 53118-9733

and

Ken Grothmann
an individual residing at W337S5059
Road GG, Dousman, Wisconsin 53118-
9733

Defendants.

---

**COMPLAINT**

---

1. Plaintiffs Aristocrat Technologies Australia Pty Ltd. ("ATA") and Aristocrat Technologies, Inc. ("ATI") (collectively, "Plaintiffs"), by their undersigned counsel, allege as follows against Defendants American Entertainment Services, Inc. ("AES") and Ken Grothmann ("Grothmann") (collectively, "Defendants").

## NATURE OF THE ACTION

2. This is an action for trademark infringement and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), and 1117; unfair competition and false designation of origin under 15 U.S.C. § 1125(a); and copyright infringement under the Copyright Act, 17 U.S.C. § 501.

## THE PARTIES

3. ATA is an Australian limited company with its principal place of business at 85 Epping Road, North Ryde, New South Wales 2113, Australia.

4. ATI is a Nevada corporation with its principal place of business at 10220 Aristocrat Way, Las Vegas, Nevada 89135.

5. AES is a Wisconsin corporation with its principal place of business at W337S5059 Road GG, Dousman, Wisconsin 53118-9733.

6. Grothmann is an owner and principal of AES and, upon information and belief, resides in Wisconsin and conducts business from AES's principal place of business at W337S5059 Road GG, Dousman, Wisconsin 53118-9733.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)–(b), and 15 U.S.C. § 1121, because this action arises under the Lanham Act and Copyright Act.

8. This Court has personal jurisdiction over Defendants because AES maintains its principal place of business and Grothmann resides in this District.

9. In addition to having sufficient "minimum contacts" under due process, the conduct giving rise to Plaintiffs' claims in this action satisfies Wis. Stat. §§ 801.05(1)(d) and 801.05(3) of the Wisconsin long-arm statute.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and all if not a substantial portion of the infringing products that are the subject of this complaint are manufactured, assembled, distributed, sold, licensed and/or leased in this District.

## BACKGROUND ON ARISTOCRAT

11. ATA is a global gaming-technology company that owns, sells, licenses, leases and distributes electronic gaming machines containing ("EGM" or "EGMs") game software, trademarks, and other copyrighted works.

12. ATI is ATA's United States affiliate and, under license from ATA, markets, distributes, licenses, and leases ATA's EGMs and game software in the United States.

13. ATA uses the Aristocrat Marks in United States commerce through its authorized licensee, ATI, and ATA controls the nature and quality of the goods and services offered under the Aristocrat Marks.

14. Plaintiffs offer a portfolio of EGMs and game software known for distinctive titles, graphics, audiovisual elements, and gameplay, including the Buffalo family of games which includes Buffalo Link, Buffalo Chief, Buffalo Diamond Extreme, and the Dragon Link Family of Games, which includes Autumn Moon, Golden Century, Happy & Prosperous, and Panda Magic.

15. In the United States, ATI distributes, licenses, and leases ATA-owned EGMs and game software only through authorized channels and only to licensed and regulated gaming establishments.

16. In Wisconsin, ATI distributes, licenses and leases ATA EGMs and EGM software to licensed and regulated gaming establishments including Potawatomi Bingo Casino (Milwaukee), Ho-Chunk Gaming Wisconsin Dells (Baraboo), Gun Lake Casino (Wayland), and Ho-Chunk Gaming Wittenberg (Wittenberg).

17. Plaintiffs have not licensed, authorized, or approved Defendants to manufacture, assemble, distribute, sell, license, lease, display, perform, or operate ATA's EGMs or ATA's game software.

18. Plaintiffs have not licensed, authorized, or approved Defendants to sell, license, lease, place, install, display, perform, or operate EGMs or gaming software bearing ATA's trademarked game titles, or game software that is substantially similar to ATA's copyrighted game software, in any establishment or venue where Defendants' EGMs are found.

19. To Aristocrat's knowledge based on its understanding of the locations where Defendants' products are located, it would be illegal for ATI to sell or otherwise place its EGMs and gaming software in establishments of the type where Defendants' products are sold or otherwise placed.

**PLAINTIFFS' TRADEMARKS**

20. ATA owns U.S. trademark Registrations for AUTUMN MOON (Reg. No. 5515140); BUFFALO (Reg. No. 7476658); BUFFALO DIAMOND (Reg. No. 6245907); BUFFALO DIAMOND 10TH ANNIVERSARY EDITION (Reg. No. 6150654); BUFFALO CHIEF (Reg. No. 6365349); BUFFALO DIAMOND EXTREME (Reg. No. 6674120); BUFFALO GOLD (Reg. No. 5700209); BUFFALO LINK (Reg. No. 5404634); BUFFALO XTREME (Reg. No. 5782849); GOLDEN CENTURY (Reg. No. 4986714); HAPPY & PROSPEROUS (Reg. No. 5071663); PANDA MAGIC (Reg. No. 5304290); DRAGON LINK

(Reg. No. 5360457); DRAGON LINK (Stylized), , (Reg. No. 7242834);

BUFFALO (Stylized), (Reg. No. 7191714), BUFFALO & Design,



(Reg. No. 4190788); BUFFALO (Stylized),

(Reg. No. 6969559); Buffalo Design,  (Reg. No. 4529598); Buffalo Design,



(Reg. No. 6814977); Sensory Mark (the mark consists of the sound of men shouting an elongated "B-U-F-F-A-L-O" call accompanied by the sound of galloping) (Reg. No. 7700743) (collectively, the "Aristocrat Trademark Registrations").

21. The marks identified in the Aristocrat Trademark Registrations are referred to collectively as the "Aristocrat Marks."

22. The Aristocrat Trademark Registrations are valid and subsisting and constitute prima facie evidence of the validity of the Aristocrat Marks, ATA's ownership of them, and ATA's and its licensee's exclusive right to use them in connection with the goods and services identified in the Aristocrat Trademark Registrations.

23. The Aristocrat Trademarks are inherently distinctive.

24. The Aristocrat Trademark Registrations are in good standing, and certain Aristocrat Trademark Registrations are incontestable pursuant to 15 U.S.C. § 1065.

25. Through extensive and substantially continuous use and promotion, the Aristocrat Marks have acquired substantial goodwill and identify Plaintiffs as the source of the associated EGMs, software, and services.

**ATA'S COPYRIGHTED WORKS**

26. ATA owns original visual art, animations, audiovisual works, sound recordings, and other copyrightable content incorporated into its EGMs and software.

27. ATA owns valid and subsisting United States copyright registrations for Buffalo Yell (SR0000943206); Buffalo Link Flaming Arrow (VA0002265328); Buffalo Link Flaming Buffalo Head (VA0002265173); Flaming Buffalo Head Animation (PA0002309560); Buffalo and Design (VA0001951830); Buffalo Herd Design (VA0002156959); Buffalo Coin (Back) (VA0002265881); Buffalo Coin Front (VA0002266251); Buffalo Coin Fountain (PA0002313149); Buffalo Chief Character (VA0002285145); Buffalo Gold (VA0002280454); Autumn Moon – Goddess (VA0002369827); Autumn Moon – Hold & Spin (PA0002424274); and Golden Century – Emperor – Image (VA0002372588) (collectively, the "Aristocrat Copyright Registrations").

28. The works covered by the Aristocrat Copyright Registrations are referred to collectively as the "Aristocrat Copyrighted Works." ATA owns the exclusive rights in those works, including the rights to reproduce, distribute, display, and publicly perform them; and the right to authorize and license third parties to reproduce, distribute, display, and publicly perform them.

**DEFENDANTS AND THEIR INFRINGING CONDUCT**

29. Upon information and belief, AES manufactures, assembles, distributes, sells, licenses, leases, and/or services gaming and amusement machines, including EGMs, in Wisconsin.

30. AES owns and controls the website located at http://www.aeswi.com/ (the "AES Website") and operates a Facebook page under the name American Entertainment (the "AES Facebook Page"). A true and correct copy of the AES Facebook Page is attached as Exhibit A.

31. The AES Facebook Page includes photos of various events where AES games are made available to the public or patrons of establishments where AES games are installed.

32. One photo appearing on the AES Facebook Page posted on or about October 23, 2024, displays a row of gaming machines that included a BUFFALO DIAMOND gaming machine located at Shooters Tavern & Golf Simulators in Burlington, Wisconsin. A true and correct copy of the post is attached as Exhibit B.

33. Another photo posted to the AES Facebook Page on or about July 13, 2025, displays a DRAGON LINK EGM and a BUFFALO XTREME EGM at a public motorcycle event held in Wisconsin. A true and correct copy of the post is attached as Exhibit C.

34. Another photo posted to the AES Facebook Page on or about January 3, 2026, displays a row of EGMs that include DRAGON LINK and BUFFALO CHIEF EGMs and an AES-branded cash machine that enables players to redeem tickets for cash earned playing the EGMs. A true and correct copy of the post is attached as Exhibit D.

35. In early 2026, ATI discovered EGMs bearing AES's name and logo in bars and other Wisconsin establishments. Those machines displayed exact copies or colorable imitations

of the Aristocrat Marks and reproduced, displayed, and performed content identical or substantially similar to the Aristocrat Copyrighted Works.

36. ATI investigated several establishments in and around Southeastern Wisconsin offering machines identified as AES machines, including Camp Bar in Shorewood, Wisconsin.

37. A machine at Camp Bar displayed the DRAGON LINK mark on its home screen and game-title tiles for GOLDEN CENTURY, AUTUMN MOON, PANDA MAGIC, and HAPPY & PROSPEROUS (the "Infringing Dragon Link Machine"). Photos of the Infringing Dragon Link Machine located at Camp Bar in Shorewood Wisconsin is shown in Exhibit E.

38. The Infringing Dragon Link Machine bore AES nameplates and a telephone number identical to the number displayed on the AES Website.

39. Upon information and belief, AES manufactured, assembled, distributed, sold, licensed, and/or leased the Infringing Dragon Link Machine to Camp Bar.

40. The Infringing Dragon Link Machine and the machines depicted in Exhibit E are designed to appear highly similar to Plaintiffs' genuine EGMs and/or offer game software designed to appear highly similar to Plaintiffs' genuine game software (collectively, the "Infringing Machines").

41. Without authorization, the Infringing Machines use exact copies or colorable imitations of the Aristocrat Marks, including DRAGON LINK, AUTUMN MOON, HAPPY & PROSPEROUS, GOLDEN CENTURY, PANDA MAGIC, BUFFALO CHIEF, BUFFALO XTREME, and BUFFALO DIAMOND EXTREME.

42. Without authorization, the Infringing Machines reproduce, distribute, display, and publicly perform graphics, music, and sound effects that are identical to or substantially similar to the Aristocrat Copyrighted Works.

43. Upon information and belief, each Infringing Machines enable players to place wagers and earn prizes by playing the Infringing Machines.

44. Upon information and belief, each Infringing Machine enables players to earn points and cash in points for cash at machines owned and/or operated by AES, which are stationed in close proximity to the Infringing Machines.

45. Upon information and belief, AES has manufactured, assembled, distributed, sold, licensed, and/or leased additional Infringing Machines in Wisconsin and continues to do so, all without authorization from Plaintiffs.

46. At all relevant times, Grothmann owned, managed, and exercised operational control over AES, including control over AES's acquisition, manufacture, assembly, programming, marketing, distribution, placement, licensing, leasing, servicing, and removal of EGMs.

47. Upon information and belief, Grothmann personally directed, authorized, approved, and participated in AES's manufacture, assembly, programming, distribution, placement, licensing, leasing, display, and operation of the Infringing Machines, including the incorporation, reproduction, display, and public performance of the Aristocrat Copyrighted Works.

48. Upon information and belief, Grothmann selected or approved the games and software installed on the Infringing Machines, directed or approved their placement, and authorized AES personnel or agents to install, service, maintain, update, or replace the software and audiovisual content displayed and performed by those machines.

49. Upon information and belief, Grothmann personally directed, authorized, approved, and materially participated in AES's use of the Aristocrat Marks on and in connection

with the Infringing Machines, including the selection and approval of the marks and game titles displayed on the machines and the distribution, licensing, leasing, placement, advertising, and/or operation of machines bearing Aristocrat Marks.

50. Grothmann knew, or should have known, that ATA owned the Aristocrat Copyrighted Works and that neither he nor AES had authorization to reproduce, distribute, display, perform, or otherwise use those works. Despite that knowledge, Grothmann caused, encouraged, and facilitated AES's continued infringement.

51. Grothmann had the authority and practical ability to prevent, stop, or limit AES's infringement but declined to do so and instead approved and facilitated the infringing conduct.

52. Grothmann and AES derived revenue from the distribution, placement, licensing, leasing, servicing, or operation of the Infringing Machines, and Grothmann received a direct financial benefit from that exploitation.

53. Defendants' conduct is likely to cause confusion, mistake, or deception concerning the source, sponsorship, affiliation, or approval of the Infringing Machines.

54. Defendants acted willfully and with knowledge of Plaintiffs' rights.

55. Unless enjoined, Defendants' conduct will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

## COUNT I

### ATA's Trademark Infringement Claim Against Defendants (Lanham Act, 15 U.S.C. § 1114(1))

56. ATA realleges and incorporates paragraphs 1 through 55 as though fully set forth herein.

57. ATA owns the Aristocrat Trademark Registrations and the Aristocrat Marks.

58. Without Defendants' consent, Defendants used and/or authorized the use in commerce of reproductions, counterfeits, copies, or colorable imitations of the Aristocrat Marks in connection with the manufacture, assembly, distribution, sale, licensing, leasing, display, and operation of the Infringing Machines.

59. The Infringing Machines, and the game software installed on the Infringing Machines, and the related distribution, licensing, leasing, and/or operation of the Infringing Machines are identical or closely related to the goods identified in the Aristocrat Trademark Registrations.

60. Defendants' unauthorized use is likely to cause confusion, mistake, or deception concerning the source, affiliation, sponsorship, or approval of the Infringing Machines and related goods and services.

61. Defendants' infringement was and is knowing, intentional, and willful.

62. As a direct and proximate result of Defendants' conduct, ATA has suffered and will continue to suffer damages and irreparable harm. ATA is entitled to relief under 15 U.S.C. §§ 1116 and 1117.

## COUNT II

### ATA's Trademark Counterfeiting Claim Against Defendants
### (Lanham Act, 15 U.S.C. §§ 1114(1), 1116(d), and 1117(b)–(c))

63. ATA realleges and incorporates paragraphs 1 through 62 as though fully set forth herein.

64. The Aristocrat Marks include federally registered marks for EGMs and related goods including the Aristocrat Trademark Registrations.

65. Without ATA's authorization, Defendants used and authorized the use in commerce of spurious marks identical to, or substantially indistinguishable from, the Aristocrat Marks on the same type of goods for which the Aristocrat Marks are registered.

66. Defendants knew that the Infringing Machines were not genuine Aristocrat machines and that the marks displayed on them had not been authorized by Plaintiffs, but intentionally used those marks to make the machines appear genuine or affiliated with Plaintiffs.

67. Defendants intentionally used the counterfeit marks in connection with the sale, offering for sale, distribution, licensing, and leasing of the Infringing Machines.

68. The marks displayed on the Infringing Machines are counterfeit marks within the meaning of 15 U.S.C. §§ 1116(d) and 1127.

69. Each of the Aristocrat Marks displayed on the Infringing Machines was registered with the U.S. Patent and Trademark Office at the time of Defendants unauthorized manufacture, assembly, distribution, sale, licensing and/or leasing of the Infringing Machines.

70. Defendants' use of the counterfeit marks was intentional and knowing.

71. ATA is entitled to the remedies available under 15 U.S.C. §§ 1116, 1117(b)–(c), and 1118, including injunctive relief; seizure, impoundment, and destruction as authorized by law; recovery of damages and profits subject to the statutory enhancement in 15 U.S.C. § 1117(b); or, at ATA's election, statutory damages under 15 U.S.C. § 1117(c).

## COUNT III

**Unfair Competition and False Designation of Origin Against Defendants**
**(Lanham Act, 15 U.S.C. § 1125(a))**

72. Plaintiffs reallege and incorporate paragraphs 1 through 71 as though fully set forth herein.

73. Defendants' unauthorized use in commerce of the Aristocrat Marks on and in connection with the Infringing Machines constitutes false or misleading designations of origin, descriptions, and representations of fact.

74. Defendants' conduct is likely to cause consumers to believe mistakenly that the Infringing Machines and related goods or services originate with, are affiliated with, or are sponsored, authorized, or approved by Plaintiffs.

75. Defendants' conduct was and is knowing, intentional, and willful.

76. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer damages and irreparable harm. Plaintiffs are entitled to relief under 15 U.S.C. §§ 1116 and 1117.

## COUNT IV

### Direct Copyright Infringement Against AES
### (Copyright Act, 17 U.S.C. § 501)

77. ATA realleges and incorporates paragraphs 1 through 76 as though fully set forth herein.

78. ATA owns valid copyrights in the Aristocrat Copyrighted Works and has registered those works with the United States Copyright Office.

79. Without ATA's authorization, AES reproduced, distributed, displayed, and publicly performed the Aristocrat Copyrighted Works through the manufacture, assembly, distribution, placement, licensing, leasing, display, and/or operation of the Infringing Machines.

80. AES thereby infringed ATA's exclusive rights under 17 U.S.C. § 106 in violation of 17 U.S.C. § 501.

81. AES's infringement was and is willful.

82. As a direct and proximate result of AES's infringement, ATA has suffered and will continue to suffer damages and irreparable harm. ATA is entitled to injunctive relief; actual damages and AES's profits under 17 U.S.C. § 504(b), or, at ATA's election, statutory damages under 17 U.S.C. § 504(c); costs and attorneys' fees under 17 U.S.C. § 505; and other relief available under the Copyright Act.

## COUNT V

### Contributory and Vicarious Copyright Infringement Against Grothmann (Copyright Act, 17 U.S.C. § 501)

83. ATA realleges and incorporates paragraphs 1 through 82 as though fully set forth herein.

84. AES directly infringed ATA's copyrights by reproducing, distributing, displaying, and publicly performing the Aristocrat Copyrighted Works without authorization.

85. Grothmann knew of AES's infringement and personally directed, authorized, approved, encouraged, and materially contributed to that infringement, including through the acquisition, manufacture, assembly, programming, distribution, placement, licensing, leasing, servicing, and/or operation of the Infringing Machines.

86. On information and belief, Grothmann personally approved of the acquisition of the Infringing Machines and the infringing game software installed on each Infringing Machine.

87. On information and belief, Grothmann personally approved the copying, installation and/or display of Aristocrat Copyrighted Works on the Infringing Machines.

88. On information and belief, Grothmann personally selected and approved game titles used on each Infringing Machine.

89. On information and belief, Grothmann personally directed distribution or placement of machines offering game software that was identical or substantially similar to Aristocrat Copyrighted Works.

90. On information and belief, Grothmann personally had authority to discontinue or direct others to discontinue use of the Infringing Machines that offered game software that was identical or substantially similar to Aristocrat Copyrighted Works marks but chose not to do so.

91. Grothmann's affirmative conduct fostered and facilitated AES's infringement and was material to AES's ability to reproduce, distribute, display, and/or publicly perform the Aristocrat Copyrighted Works. Grothmann is therefore contributorily liable for AES's infringement.

92. Grothmann possessed the right and practical ability to supervise, control, prevent, stop, or limit AES's infringement, including authority over the selection of software and audiovisual content installed on the Infringing Machines and over their manufacture, assembly, distribution, placement, licensing, leasing, servicing, and/or operation of the Infringing Machines.

93. The inclusion of Plaintiffs' well-known games, marks, graphics, animations, and sounds increased the attractiveness and commercial value of the Infringing Machines, induced establishments to obtain or retain the machines, encouraged patrons to play them, and thereby generated licensing, leasing, service, placement, or revenue-sharing income for AES and Grothmann.

94. Grothmann received a direct financial benefit from AES's infringement, including revenue and other commercial benefits generated by the distribution, placement, licensing,

leasing, servicing, and/or operation of the Infringing Machines. Grothmann is therefore vicariously liable for AES's infringement.

95. Grothmann's infringement was and is willful.

96. As a direct and proximate result of Grothmann's conduct, ATA has suffered and will continue to suffer damages and irreparable harm. ATA is entitled to the remedies available under 17 U.S.C. §§ 502–505.

## JURY TRIAL DEMAND

97. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

A. WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the applicable Defendant or Defendants and grant the following relief:

B. Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, representatives, and all persons acting in active concert or participation with them who receive actual notice of the injunction from using the Aristocrat Marks, any counterfeit or colorable imitation of the Aristocrat Marks, or any false designation or representation likely to cause confusion concerning Plaintiffs' affiliation, sponsorship, authorization, or approval;

C. Preliminarily and permanently enjoin AES and Grothmann, and all persons acting in active concert or participation with them who receive actual notice of the injunction, from reproducing, distributing, displaying, publicly performing, or otherwise infringing the Aristocrat Copyrighted Works, or inducing, causing, materially contributing to, supervising, controlling, or financially benefiting from such infringement;

D. Order the impoundment and destruction, or other disposition as the Court deems appropriate, of the Infringing Machines, counterfeit marks, unauthorized copies of the Aristocrat

Copyrighted Works, and related materials under 15 U.S.C. § 1118 and 17 U.S.C. § 503, and grant any seizure relief authorized by 15 U.S.C. § 1116(d);

E. Require Defendants to account for all profits attributable to their infringement and award Plaintiffs their actual damages and Defendants' profits as authorized by 15 U.S.C. § 1117(a), together with any enhancement the Court finds appropriate;

F. For intentional use of counterfeit marks, award ATA three times Defendants' profits or ATA's damages, whichever is greater, together with reasonable attorneys' fees, under 15 U.S.C. § 1117(b), or, at ATA's election, statutory damages under 15 U.S.C. § 1117(c);

G. Award ATA its actual damages and Defendants' profits attributable to copyright infringement under 17 U.S.C. § 504(b), or, at ATA's election, statutory damages under 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement to the extent authorized by law;

H. Award Plaintiffs their reasonable attorneys' fees and costs under 15 U.S.C. § 1117 and award ATA its reasonable attorneys' fees and costs under 17 U.S.C. § 505;

I. Award prejudgment and post-judgment interest as permitted by law; and

J. Grant such other and further relief as the Court deems just and proper.

Dated this 19th day of October 2026.

*s/Guy R. Temple*______________________
Guy R. Temple
Wisconsin State Bar ID No. 108636
gtemple@reinhartlaw.com
Daniel E. Kattman
Wisconsin State Bar ID No. 1030513
dkattman@reinhartlaw.com
Heidi R. Thole
Wisconsin State Bar ID No. 1096439
hthole@reinhartlaw.com
Attorneys for Plaintiffs
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-1097